# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE UNDERWOOD,<br><br>    Petitioner,<br><br>vs.<br><br>PAUL COPENHAVER,<br><br>    Respondent. | Case No.:1:12-cv-00646-DLB (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS COPRUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT<br><br>[Doc. 1] |

    Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

    Petitioner is currently in custody at the United States Penitentiary in Atwater, California. He has a projected release date of January 31, 2020, via Good Conduct Time release. See Ex. 1, Declaration of Jennifer Vickers.

    Petitioner filed the instant petition for writ of habeas corpus on January 3, 2012, and challenges a disciplinary action taken against him for violating BOP disciplinary rules. More

---

[1] In the answer, Respondent submits that at the time the petition was filed Warden Hector Rios was the Warden at the United States Penitentiary in Atwater, California. However, Warden Rios has since retired and Warden Paul Copenhaver is now the Warden at Atwater. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Warden Copenhaver is substituted in place of Warden Rios.

specifically, Petitioner contends (1) his due process rights were violated during the disciplinary process; and, (2) BOP officials failed to follow policy during the disciplinary process.

Respondent filed a response to the petition on August 30, 2012, and Petitioner filed a traverse on September 20, 2012.

## ANALYSIS

I. <u>Subject Matter Jurisdiction and Venue</u>

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. <u>See</u> 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). At the time the instant petition was filed, Petitioner was housed at the United States Penitentiary in Atwater, California. Since Atwater is located within the Eastern District of California, this Court has jurisdiction to review the instant petition.

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. <u>Id.</u> at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269 (9th Cir. 1989), citing <u>Superintendent, etc. v. Hill</u>, 472 U.S. 445, 454-455 (1984).

II. <u>Procedural Due Process and Some Evidence</u>

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the

disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927). The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Hill, 472 U.S. at 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

On or about February 10, 2011, Petitioner was issued an incident report for "Threatening Another with Bodily Harm," and "Engaging in a Group Demonstration," in violation of 28 C.F.R. § 541.13, Codes 203 & 212. See Ex. 2, Declaration of Richard Devereauz; Attachment 1, Incident Report. The written report specifically stated by officer Green:

> On Thursday, 2-10-11 at 1:10P.M., I was making rounds in the B-1 dayroom. An inmate asked me if I could change the television channel at which time I advised him that I could not change a television that was for the news to a music channel. Inmate #53690-066 Underwood, Dwayne, then began shouting "I hate this place, it is fucking stupid." Inmate Underwood then started up the stair case saying "I am ready to crack some heads." I felt this statement was directed towards me. Approximately 20 inmates in B1 unit were in the dayroom listening to inmate Underwood's comments. Inmate Underwood then entered cell B01-206 and began slamming locker doors. I then notified the Operations Lieutenant and inmate Underwood was escorted over to the Lieutenant's Office.

Id. On February 10, 2011, Petitioner was provided advance written notice of the violation when a copy of the report was delivered to him. Id.

On February 14, 2011, an initial hearing was conducted by the Unit Discipline Committee (UDC). See Ex. 2, Attachment 2, Discipline Hearing Officer Report p. 3. Petitioner was found guilty of the infractions, and he lost 30 days of e-mail privileges and 30 days of

commissary privileges. Id. Petitioner appealed the UDC's findings, and the Bureau of Prison's Regional Director of the Mid-Atlantic Regional Office, ordered a rehearing to be conducted by the Disciplinary Hearing Officer (DHO). Id. The Regional Director found that because Petitioner was sentenced under the Prison Litigation Reform Act, the infractions should have been heard by the DHO in a full hearing, and informally heard by the UDC. See Ex. 2, Attachment 2, Discipline Hearing Officer Report p. 3. As a consequence, a rehearing before the DHO was ordered. Id.

The disciplinary hearing was conducted by DHO, Richard Devereaux, on May 12, 2011. See Ex. 2, Attachment 2, Discipline Hearing Officer Report p. 1. DHO, Richard Devereaux was not involved in the incident or investigation. Nor was DHO Devereaux a member of the UDC and did not take any part in the investigation.

At the hearing, Petitioner was provided the opportunity to request staff assistance prior to the hearing but declined to do so. Id. at 1.

Petitioner was provided the opportunity to request witnesses and present documentary evidence at the hearing. Id. at 1-2. Although Petitioner requested 20 witnesses, he was unable to provide any of the witnesses' names and he was informed that he could postpone the hearing in order to obtain the witnesses' names. Id. However, Petitioner stated that he did not wish to postpone the hearing, and chose to proceed without the presence of the witnesses. Id. Petitioner's actions in effect constituted a voluntary waiver of his right to call witnesses. Id. Petitioner argues he did not waive the presence of the witnesses and his request was based on the reporting officer's statement that the incident occurred in the presence of 20 inmates. The fact that the reporting officer stated at least 20 other inmates were present during Petitioner's actions, did not deny him the opportunity to investigate and present these witnesses during his disciplinary hearing. It is incumbent upon Petitioner to provide BOP officials with sufficient information to determine if safety concerning would preclude calling certain witnesses. Bostic

v. Carlson, 884 F.2d 1267, 1273 (9th Cir. 1989) ("The inmate, however, must inform the committee of the nature of the testimony each witness will deliver in order to allow the committee to determine whether institutional concerns would preclude calling the witnesses"). To this date, Petitioner has failed to identify any of the 20 witnesses or provide any testimony they could have provided at the hearing. Because Petitioner did not possess the relevant knowledge regarding the inmate witnesses, the Court finds no due process violation occurred as a result of continuing the hearing at Petitioner's request.

The DHO considered the fact that Petitioner denied the charges and stated "he told the inmate population there was no point 'fucking' with the officer since he was told by 'higher ups' he was not supposed to change the channel on the televisions. [Petitioner] also stated he told the inmate population that the unit manager would come out and conduct a town hall on the television issues." See Ex. 2, Attachment 2, Discipline Hearing Officer Report, at 1.

After reviewing all the evidence, the DHO found that Petitioner committed the rules violation of "Threatening Another with Bodily Harm," as alleged in the incident report. The DHO relied on the written statement of the reporting officer, and found that Petitioner did not commit the charge of "Engaging in a Group Demonstration," and the offense was dismissed. Id. at 3. The DHO specifically stated, in pertinent part:

> The DHO considered [Petitioner's] denial of responsibility for these acts. The DHO understands [Petitioner] has a motive for denying his involvement in these acts since the charges are serious and have significant consequences should he be found responsible for these acts. That motive is not present for the reporting officer, J. Green, who is under legal obligation to be truthful. The reporting officer states when he advised [Petitioner] he could not change the television channel, [Petitioner] began shouting "I hate this place, it is fucking stupid." It is apparent [Petitioner] did not like the response given to him by the reporting officer. This statement, combined with the shouting demonstrates [Petitioner] was angry, and that anger was directed at the reporting officer. Having been the one to deny [Petitioner's] request to change the channel and knowing he was angry, it is reasonable for the reporting officer to believe [Petitioner's] next statement "I am ready to crack some heads" was directed towards him. The DHO believes any reasonable person, placed in the same situation as the reporting officer, would conclude that this statement was a threat to do physical harm. Furthermore, the act of slamming lockers in

the cell demonstrates [Petitioner's] ability to use physical force. The DHO finds the reporting officer's description of the incident satisfies the element of the offense for threatening another with bodily harm. The DHO finds no evidence, nor did [Petitioner] provide evidence, other than his denial, that he did not commit the prohibited act or that the staff member conspired to falsely accuse him of this misconduct. Accordingly, the DHO gives greater weight to the reporting officer's description of the incident. Therefore, the DHO finds [Petitioner] committed the prohibited act of Code 203, Threatening Another with Bodily Harm.

Ex. 2, Attachment 2, Disciplinary Hearing Officer Report at p. 3.

After the hearing, Petitioner was given a written statement by the factfinder of the evidence relied on and the reasons for the guilty finding. Id. at 4. Petitioner was assessed a loss of 27 days of good conduct time, 30 days disciplinary segregation, and 90 days loss of commissary, e-mail and phone privileges. Id.

Considering the entire record, Officer Green's report that Petitioner threatened another with bodily harm provided "some evidence" to support his conviction. Although Petitioner claims the reporting officer's report is false, Petitioner fails to point to anything upon which this Court could base such a conclusion. Accordingly, Petitioner's argument is without merit.

Petitioner argues the BOP failed to follow its policy during the disciplinary process. Petitioner specifically alleges that during the rehearing on the infraction, the DHO violated BOP policy by increasing his punishment to a higher level than the punishment he received at his initial UDC hearing.

28 C.F.R. § 541.19[2] states:

On appeals, the appropriate reviewing official (the Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions, including ordering a rehearing, of any disciplinary action of the Unit Discipline Committee or Discipline Hearing Officer, but may not increase any valid sanction imposed.

---

[2] Title 28 C.F.R. § 541.10, et seq., is the applicable BOP disciplinary regulation because it was in effect when Petitioner committed his violation. Amended BOP disciplinary regulations were issued in 2011, and became effective on August 1, 2011. See 28 C.F.R. § 541.1, et seq., and Program Statement 5270.09, Inmate Discipline Program, dated July 8, 2011 (available at www.bop.gov). Respondent submits and this Court agrees that for purposes of due process, the regulations are essentially the same and no material difference has resulted.

Id. Petitioner argues that this regulation prevents the DHO from increasing the sanction beyond what was imposed at the initial hearing. However, the plain language of the policy places the limitation on increasing the sanctions toward the "reviewing official," i.e., the Warden, Regional Director or General Counsel. 28 C.F.R. § 541.19. The policy does not restrict the DHO when directed to conduct a rehearing. Id.

It appears that Petitioner is arguing the DHO was the "reviewing official" restricted from increasing a valid sanction previously imposed. This is not so. The reviewing official under section 541.19 is the Warden, Regional Director or General Counsel. Id. Thus, section 541.19 does not prohibit the DHO from increasing or modifying a sanction when the rehearing is ordered by a reviewing official (in this instance the Regional Director). Accordingly, there is no merit to Petitioner's argument that the BOP failed to follow its policy during the disciplinary proceeding.

Furthermore, the initial disciplinary finding was remanded for rehearing because Petitioner was sentenced under the Prison Litigation Reform Act, resulting in the disposition of disciplinary actions by the UDC improper. See 28 C.F.R. § 541.19. During the initial hearing before the UDC, Petitioner was not imposed the mandatory sanction of loss of conduct credits in violation of 28 C.F.R. § 541.3, Table 3, Code 203, Sanctions. As a result, the initial disciplinary finding was not a valid sanction. Therefore, the rehearing was properly conducted and the imposition of loss of conduct credits was a valid sanction for the disciplinary finding. Accordingly, there was no due process violation.

To the extent Petitioner attempts to argue his due process rights were violated by the BOP's failure to comply with its own policy during the administrative remedy process, such claim is not cognizable because there is no due process right to an administrative grievance procedure. See Ramirez v. Galaza, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure") (citing Mann v. Adams, 855

F.2d 639, 640 (9th Cir. 1988)); see also 28 U.S.C. § 2241(c)(3) (in order to proceed by way of a habeas corpus petition, the prisoner must demonstrate his custody is in "violation of the Constitution or laws or treaties of the United States.")

In sum, all due process requirements were satisfied. The petition is without merit and should be denied.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED; and

2. The Clerk of Court is directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

Dated:   **September 24, 2012**              **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE